UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CYNTHIA PITT,

    Plaintiff,

vs.                                                Case No. 3:08-cv-420-J-MCR

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## MEMORANDUM OPINION AND ORDER[1]

This case is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **REVERSED** and **REMANDED**.

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income benefits on April 9, 2004, alleging an inability to work since March 16, 2004. (Tr. 68-70). The Social Security Administration denied this application initially and upon reconsideration. (Tr. 60-61, 66-67). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ") on May 3, 2007. (Tr. 40, 524-565). On September 25, 2007, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 13-26). The Appeals Council subsequently denied Plaintiff's

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 10).

request for review. (Tr. 5-7). Accordingly, the ALJ's September 25, 2007 decision was the final decision of the Commissioner. Plaintiff timely filed a Complaint in the U.S. District Court on October 12, 2008. (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Basis of Claimed Disability

Plaintiff claims to be disabled since March 16, 2004, due to heart problems and recurrent heart attacks. (Tr. 88).

### B.    Summary of Evidence Before the ALJ

On the date the ALJ's decision was issued, Plaintiff was forty-one years old. (Tr. 26, 68). She has a GED (Tr. 92) and past relevant work experience as an EMT, general clerk, dump truck driver, heavy truck driver, light truck driver, and telephone electrician. (Tr. 80). Plaintiff's pertinent medical history is discussed at length in the ALJ's decision and will be summarized here.

On March 30, 2003, Plaintiff presented to Shands Jacksonville with complaints of chest pain. (Tr. 251-52). Plaintiff was discharged the next day with the following diagnoses: congenital deficiency of clotting factors and coronary atherosclerosis of native coronary vessel. (Tr. 246). Plaintiff was again admitted to Shands on November 7, 2003 for complications resulting in chest pain. (Tr. 242). On March 19, 2004, an echocardiogram revealed moderate LV dysfunction with mild anterior/anteroseptal akinesis. (Tr. 234).

On June 2, 2004, Plaintiff again presented to Shands with complaints of chest pain. (Tr. 148). At Shands, Plaintiff underwent a cardiac catheterization, the conclusion

2

of which was severe obstructive coronary artery disease. (Tr. 143). On June 7, 2004, Plaintiff underwent a triple coronary artery bypass grafting procedure in an attempt to prevent future heart attacks. (Tr. 129).

On June 29, 2004, Plaintiff presented to Orange Park Medical Center with complaints of chest pain and shortness of breath. (Tr. 165). An echocardiogram revealed left ventricular systolic dysfunction with distal septal anterolateral and apical severe hypokinesis and a reduced ejection fraction between 25 and 30%, biatrial enlargement, mild to moderate mitral regurgitation, and mild tricuspid insufficiency. (Tr. 158). After a brief stay, Plaintiff was discharged on July 9, 2004 with the following diagnoses: congestive heart failure (acute exacerbation), stable coronary artery disease, right upper quadrant pain, and chronic obstructive pulmonary disease. (Tr. 150).

On July 22, 2004, Plaintiff underwent a cardiac catheterization after presenting to Shands with complaints of chest pain. (Tr. 225). The catheterization revealed severe native coronary artery disease. Id. On September 30, 2004, Plaintiff underwent another cardiac catheterization, the impression of which was severe coronary artery disease with a resulting ejection fraction of 60%. (Tr. 207).

On January 4, 2005, Plaintiff presented to Shands with complaints of chest pain. (Tr. 193). A chest AP performed the same day revealed congestive cardiac failure as the cause of Plaintiff's pain. (Tr. 197). Plaintiff again visited Shands on January 22, 2005, and doctors opined she was suffering from angina and premature coronary artery disease. (Tr. 176-79).

On March 1, 2005, Dr. William Choisser, M.D. performed a physical consultative

examination during which he noted Plaintiff was "extremely unstable and labile in terms of the extensiveness of the [coronary artery disease]." Dr. Choisser's impression was of "[coronary artery disease], severe, complicated by three [heart attacks], [congestive heart failure], serious cardiac muscle injury, and persistence of cardiac chest pain." (Tr. 265).

On March 21, 2005, Plaintiff was admitted to Shands after presenting with complaints of chest pain. (Tr. 301). Plaintiff underwent a heart function comparison on March 25, 2005, which showed: apical akinesis with marked myocardial thinning, mild to moderate hypokinesis of anterior wall and distal septal wall, and chronic non-viable transmural infarction at the apex. (Tr. 290). On March 27, 2006, Plaintiff underwent a cardiac catheterization at St. Vincent's Hospital, the impression of which showed significant disease of the circumflex and moderate left ventricular systolic dysfunction with moderate mitral regurgitation. (Tr. 446-448). Upon discharge on March 28, 2006, Plaintiff was diagnosed with chest pain, left ventricular systolic dysfunction with moderate mitral regurgitation, congestive heart failure, and coronary artery disease. (Tr. 436).

Plaintiff was later admitted to Baptist Medical Center on July 13, 2006. (Tr. 409). On July 17, 2006, Plaintiff underwent another cardiac catheterization which showed ischemic cardiomyopathy with patent saphenous vein graft and patent left main/LAD stent. (Tr. 490-91). Upon discharge, Plaintiff was diagnosed with chest pain, coronary artery disease, hypertension, hypercholesterolemia, and hypokalemia. (Tr. 398).

On August 22, 2006, Plaintiff was examined by Dr. C. David Hassel, M.D., a cardiologist, who opined Plaintiff was suffering from coronary artery disease and

4

congestive heart failure. (Tr. 486). Plaintiff was again examined by Dr. Hassel on May 14, 2007. (Tr. 511-12). That day, Dr. Hassel completed a cardiac residual functioning capacity questionnaire. (Tr. 516-20). On this questionnaire, Dr. Hassel opined Plaintiff experienced chest pain with minimal exertion (Tr. 516), that Plaintiff's angina limited the kinds of activities Plaintiff could perform (Tr. 517), and that Plaintiff's condition would hinder her ability to concentrate. (Tr. 517). Dr. Hassel stated he was able to form these opinions because he "followed [Plaintiff] on a frequent basis since [June 2006]." (Tr. 516).

In October 2004, a physical residual functional capacity assessment form was completed by a single decision maker[2] ("SDM"). (Tr. 167-74). The SDM indicated Plaintiff would be capable of sedentary work.[3] Id. In June 2005, a physical residual functional capacity assessment form was completed by Dr. Eric C. Puestow, M.D. ("Dr. Puestow"). (Tr. 306-13). Dr. Puestow determined Plaintiff was capable of light work.[4]

---

[2] An SDM is a non-examining, non-physician lay person used in order to expedite disability decisions. See Status of SSA's Disability Improvement Objectives, June 2002, http://www.ssa.gov/oig/ADOBEPDF/A-07-00-10055.pdf; Bolton v. Astrue, No. 3:07-cv-612-J-HTS, 2008 WL 2038513 at *4 (M.D. Fla. May 12, 2008) (holding no weight can be given to the opinion of an SDM).

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 1567(a).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. . . ." 20 C.F.R. § 1567(b).

Id.

## C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Claimant bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the nondisability requirements of the Act and was insured for benefits through the date of the decision. (Tr. 15). At step one, the ALJ found Plaintiff had not engaged in substantial gainful

activity at any time since the alleged onset date. (Tr. 15). At step two, the ALJ held Plaintiff had the following severe impairments: "coronary artery disease (CAD) status-post bypass grafts and stent placement, history of congestive heart failure, hypertension, degenerative disc disease of the cervical and lumbar spines, and hypokalemia." (Tr. 16). At step three, the ALJ found Plaintiff did not have an impairment, or combination of impairments, that met or equaled any listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 18). The ALJ then determined Plaintiff retained the RFC to perform sedentary work. (Tr. 20).

In determining Plaintiff's RFC, the ALJ explained she did not give controlling weight to Dr. Hassel's May 14, 2007 report and other opinions regarding Plaintiff's cardiac impairments (Tr. 24-25). The ALJ did not give those opinions controlling weight because:

> The frequency of [Plaintiff's] treatment suggests to the Administrative Law Judge that Dr. Hassel is not a "treating source" within the meaning of the regulations. If the claimant's cardiac impairments were as severe as her testimony suggests, the Administrative Law Judge would expect to see evidence of more frequent treatment. [SSR] 96-2p provides that controlling weight must be given to a treating source's medical opinion if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is "not inconsistent" with the other substantial evidence in the case record. Even if Dr. Hassel did meet the regulatory definition of "treating source" the Administrative Law Judge would conclude that his opinion is not entitled to controlling weight as it is not corroborated by his treatment records.

(Tr. 25). The ALJ also found Plaintiff's testimony regarding her impairments not entirely credible. (Tr. 22, 23).

At step four, the ALJ determined Plaintiff no longer retained the ability to perform

7

her past relevant work. (Tr. 25). Therefore, the ALJ proceeded to step five, where she determined there were "jobs that exist in significant numbers in the national economy that [Plaintiff could] perform." Id. Thus, the ALJ concluded Plaintiff was not disabled. (Tr. 26).

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837

(11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings).

B. <u>**Issues on Appeal**</u>

Plaintiff essentially raises three issues on appeal. First, Plaintiff asserts the ALJ erred in failing to properly evaluate the medical opinion of Plaintiff's cardiologist, Dr. Hassel. (Doc. 14, p. 12). Second, Plaintiff asserts the ALJ erred in failing to determine that Dr. Hassel was a "treating physician" as that term is used in 20 C.F.R. § 404.1502. Third, Plaintiff argues the ALJ heavily relied on the opinion of the SDM in making her RFC determination. (Doc. 14, p. 21).

It is well-settled that substantial weight must be given to the opinions, diagnoses, and medical evidence of a treating physician unless there is good cause to do otherwise. See Edwards, 937 F.2d 580 at 583; 20 C.F.R. § 404.1527(d); SSR 96-6p. A treating physician is "[claimant's] own physician, psychologist, or other acceptable medical source who provides . . . or has provided . . . medical treatment or evaluation and who has, or has had, an ongoing treatment relationship" with a claimant. 20 C.F.R. § 404.1502. In considering whether a claimant and a particular physician have an ongoing treatment relationship, an ALJ will consider whether "the medical evidence establishes that [the claimant was treated by the physician] with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] condition(s)." Id.

Pursuant to the regulations, a physician may still be considered a "treating source" even if the physician has examined the claimant "only a few times or only after long intervals (e.g., twice a year) . . . if the<u> nature and frequency of the treatment or</u>

9

evaluation is typical for [the claimant's] condition." 20 C.F.R. § 404.1502 (emphasis added). Section 404.1502 thus explicitly provides that an ALJ may take frequency of treatment into consideration when determining whether a physician is a "treating source." See id. Here, the ALJ found Dr. Hassel examined Plaintiff only twice[5] over a one-year period. (Tr. 25). Accordingly, the ALJ found "[t]he infrequency of [Plaintiff's] treatment suggest[ed] . . . that Dr. Hassel [was] not a 'treating source' within the meaning of the regulation." Id.; accord Casher v. Halter, 2001 WL 394921 (S.D. Ala., Mar. 29, 2001) (finding it was questionable whether a doctor could be considered "treating" where he examined claimant on only two occasions).

Notably, the record contains evidence that Plaintiff received regular treatment for her cardiac condition. Plaintiff identified, before and during her alleged period of disability, two different cardiologists—Drs. Mansouri and LeFever—as her treating cardiologists. (Tr. 110, 436). Dr. Hassel does not appear in the record until Plaintiff's hospitalization on August 22, 2006. (Tr. 485). From March 2004 until October 2004, Plaintiff saw Dr. Mansouri once a month for evaluation of her heart condition. (Tr. 110). As these records indicate, it is reasonable to expect a claimant suffering from a severe cardiac condition to regularly visit her primary cardiologist. As such, the ALJ posited that one would expect to see "more frequent treatment" given the alleged gravity of Plaintiff's cardiac condition. (Doc. 13, p. 14). In this sense, Plaintiff's treatment can be characterized as atypical because Dr. Hassel examined Plaintiff only twice over the

---

[5] Plaintiff asserts she saw Dr. Hassel on three occasions (Doc. 14, pg. 17); however, the ALJ determined Dr. Hassel examined Plaintiff on August 22, 2006 and May 14, 2007 and reviewed her records once in July 2006. (Doc. 13, pg. 12). Further, Plaintiff's attorney admitted that Dr. Hassel examined Plaintiff twice in her argument to the Appeals Council. (Tr. 522).

10

course of one year. Accordingly, this Court finds substantial evidence supports the ALJ's determination that Dr. Hassel was not a treating source because the frequency of Plaintiff's treatment was not typical in light of the severity of her cardiac condition.

Plaintiff also argues that even if the ALJ correctly determined Dr. Hassel was not a treating physician, the ALJ still failed to properly evaluate Dr. Hassel's opinions pursuant to 20 C.F.R. § 404.1527. Pursuant to the regulations, the weight an ALJ must give medical opinions varies according to the relationship between the medical professional and the claimant. 20 C.F.R. § 404.1527(d); SSR 96-6p. An ALJ is required to give "controlling weight" to a treating source's opinion, so long as it is "well-supported" and "is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. See 20 C.F.R. § 404.1527(d)(1), (2); SSR 96-6p. Regardless of its source, the ALJ is required to evaluate every medical opinion he/she receives. 20 C.F.R. § 404.1527(d). In determining the weight given to a medical opinion, the ALJ must consider: (1) whether the physician examined the claimant, (2) whether the physician was a treating physician, (3) supportability, (4) consistency, (5) specialization, and (6) any other factors a claimant brings to the ALJ's attention. Id. In any event, the ALJ is required to "state with particularity the weight he gave to different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (citing MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir.1986).

In the instant case, the ALJ specifically noted that Dr. Hassel's opinion was not

corroborated by his treatment records and his conclusions were not entitled to controlling weight even if he was recognized as a treating source. (Tr. 25). Additionally, the ALJ stated Dr. Hassel's conclusion that Plaintiff was "restricted to less than two hours of sitting in an eight hour day [was] inconsistent with [Plaintiff's] own report that she sits 'quite well.'" Id. However, while the ALJ explained why Dr. Hassel's opinions were not entitled to controlling weight, she did not state with particularity how much, if any, weight was given to Dr. Hassel's opinion. (Tr. 13-26). In fact, the ALJ failed to specifically state that she was giving weight to *any* opinion. Id. This Court cannot conduct a meaningful review if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered. Ryan v. Heckler, 762 F.2d 939, 941 (11th Cir. 1985).

Thus, because it is unclear what opinion evidence, if any, the ALJ based Plaintiff's RFC on, the instant case must be remanded for further proceedings. On remand, the ALJ is instructed to evaluate all medical opinion evidence of record according to 20 C.F.R. Section 404.1527(d), assigning each opinion specific weight. Additionally, if the ALJ does not find any examining physician's opinion is entitled to substantial weight, she is instructed to order Plaintiff a consultative examination regarding her heart, specifically to include completion of a cardiac RFC questionnaire.

Plaintiff also argues the ALJ based her RFC determination on the opinions of an SDM. (Doc. 14, p. 21). The Middle District of Florida has previously held the opinion of an SDM is entitled to no weight. Bolton v. Astrue, No. 3:07-cv-612-J-HTS, 2008 WL 2038513 at *4 (M.D. Fla. May 12, 2008). As such, the Court instructs the ALJ to accord the SDM's opinion no weight on remand.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. 405(g). On remand, the ALJ is instructed to properly evaluate all medical opinion evidence of record, assigning each opinion a specific weight and, if necessary, order a consultative examination regarding Plaintiff's heart condition. Additionally, the ALJ shall assign no weight to the RFC assessment of the SDM. The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration. **This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

**DONE AND ORDERED** at Jacksonville, Florida, this  29th  day of July, 2009.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

13